Cynthia GENOVIA, Plaintiff,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY, a Michigan corporation, and the Security Mutual Life Insurance Company of Lincoln, Nebraska, a Nebraska corporation, Defendants.

Civ. No. 91–00288.

United States District Court,
D. Hawaii.

June 11, 1992.

Clyde Wm. Matsui, Randall Y.S. Chung, Kevin P.H. Sumida, Matsui, Chung & Sumida, Honolulu, Hawaii, for plaintiff.

Edmund Burke, Jan M. Tamura, Burke, Sakai, McPheeters, Bordner & Gilardy, Honolulu, Hawaii, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FONG, District Judge.

### INTRODUCTION

On February 18, 1992, the court held a hearing on defendants' motion for summary judgment filed on December 6, 1991. Plaintiff filed a memorandum in opposition on February 4, 1992. Defendants filed a memorandum in reply on February 11, 1992.

## BACKGROUND

On April 21, 1989, Francis Genovia ("Mr. Genovia") submitted an application for life insurance with Security Mutual Life of Lincoln, Nebraska ("Security"). On that application, a box is checked indicating that Mr. Genovia had not smoked cigarettes in the twelve months preceding the date of the application. Based on this representation, Mr. Genovia was issued a non-smoker's policy in the amount of $25,000. The premium rate for this policy was significantly lower than that charged for a smoker's policy.

On June 18, 1989, Mr. Genovia applied for life insurance with Jackson Mutual Life Insurance Company of Lansing, Michigan ("Jackson"), and indicated on that application, as well, that he had not smoked cigarettes in the twelve months preceding the date of the application. Accordingly, Jackson also issued Mr. Genovia a non-smoker's policy, in the amount of $85,000, at a premium rate significantly lower than what Jackson would have charged for a smoker's policy.

On August 14, 1990, Mr. Genovia died of cardiac tamponade and a ruptured aortic aneurism at age 50. Because Mr. Genovia had died within two years of having purchased the insurance policies, Security and Jackson conducted a routine investigation, including a review of his medical records. The investigation revealed that Mr. Genovia was, in fact, a lifelong smoker. In addition, the results of the investigation indicated that Mr. Genovia had smoked cigarettes during the time period in question. Security and Jackson, therefore, denied benefits and returned premiums on November 15, 1990, and December 14, 1990, respectively.

Cynthia Genovia ("Mrs. Genovia"), the intended beneficiary of the two policies, filed a complaint for assumpsit and damages on April 29, 1991, claiming that Security and Jackson had breached their contractual and fiduciary responsibilities. Her theory appears to be that, although her husband was a lifelong smoker, he had stopped smoking during the period in question, and then, had resumed smoking shortly after the two policies were issued.

Mrs. Genovia seeks a judgment against Jackson in the amount of at least $82,705 and against Security in the amount of at least $25,000. She also claims that defendants violated the Unfair Claims Settlement Practices Act, Haw.Rev.Stat. § 431:13–101 et seq., and that defendants engaged in unfair business practices as set forth in Haw.Rev.Stat. § 480–1 et seq. Finally, Mrs. Genovia seeks punitive and treble damages, attorneys' fees, costs and interest incurred.

Defendants now move for summary judgment on the following issues of fact and law: (1) that Mr. Genovia smoked during the relevant time period; (2) that he misrepresented his smoking history on the application; (3) that this misrepresentation was "material" as a matter of law, thus, rendering the policy voidable; (4) that plaintiff is not entitled to tort or punitive damages; (5) that plaintiff has no cause of action under for unfair claims settlement practices under Haw.Rev.Stat. § 431:13–103(a)(10); (6) that plaintiff has no right of action under Haw.Rev.Stat. § 480–1 et seq.; and (7) that plaintiff has no independent cause of action for breach of the implied covenant of good faith and fair dealings.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) provides that summary judgment shall be entered when:

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable

issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. *But cf., id.,* 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

■ If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Building Products, Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in the original)).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

■ However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*

## DISCUSSION

### I. MR. GENOVIA'S SMOKING HISTORY.

■ Defendants ask this court to grant summary judgment on the issue of whether Mr. Genovia misrepresented his smoking history on the insurance applications. In order to grant this motion, it would be necessary for this court to find: (1) that Mr. Genovia smoked during the relevant time window; and (2) that he misrepresented this fact on the applications. Because this court finds that disputed questions of material fact remain as to whether Mr. Genovia smoked during the relevant time period, it will not consider the second question.

Mr. Genovia applied for two policies of insurance: one with Jackson on June 18, 1989 and a second with Security on April 21, 1989. In each of these applications, Mr. Genovia claimed that he had not smoked cigarettes during the twelve months preceding the application. Accordingly, for the Jackson policy, the relevant time period was June 18, 1988 through June 18, 1989, and for the Security policy, the relevant time period was April 21, 1988 to April 21, 1989. Defendants assert that there is no question or doubt that Mr. Genovia smoked cigarettes during these time periods.

In response, plaintiff claims that, although Mr. Genovia was admittedly a lifelong smoker, he had quit during the relevant period only to resume smoking around September of 1989 upon his promotion to a more stressful position. Although there is much evidence that Mr. Genovia has

smoked during much of his life, including the period between September 1989 and his death approximately one year later, plaintiff argues that defendants have failed to present any evidence which conclusively pinpoints his smoking during the relevant time period—from April 21, 1988 through June 18, 1989. In order to evaluate the merits of this position, it is necessary to review the specific evidence presented by the parties.

### A. *Duane Kim.*

Defendants have presented a transcript of the deposition of Duane Kim, Mr. Genovia's supervisor during the relevant period of time. In his deposition, Kim states that he saw Mr. Genovia smoke intermittently during the time that Mr. Genovia worked under him. The court finds this general recall, however—without a more specific recollection of Mr. Genovia's smoking habits during the relevant time period—to be insufficient to support summary judgment.

### B. *Dr. Rebudal.*

The second piece of evidence presented by defendants was the testimony of Dr. Rebudal. On June 11, 1990 (after the relevant time period), Mr. Genovia entered the emergency room complaining of abdominal pain. Dr. Rebudal, the admitting physician, took Mr. Genovia's medical history and reported that "[h]e smokes one to two packs per day for 20 years."

Plaintiff concedes that Mr. Genovia was a lifelong smoker and that he had resumed smoking by this time. This evidence does not, however, conclusively demonstrate that Mr. Genovia smoked during the time interval in question. It is to be expected that Mr. Genovia would give a general answer to the question of his lifelong smoking habits. One would not expect him to go into detail, with respect to particular time periods that he may have stopped smoking, during a hurried medical history taken during his admission to the emergency room. This evidence simply does not contain an unequivocal reference to Mr. Genovia's smoking during the relevant time period.

Accordingly, this evidence fails to establish the absence of a disputed question of material fact with respect to Mr. Genovia's smoking during this period.

### C. *Conrad Chang.*

The final piece of evidence presented in support of defendants' motion for summary judgment was the deposition of Conrad Chang, the agent who sold Mr. Genovia the two policies. Chang stated that, although he never explicitly asked Mr. Genovia whether he had smoked during the last 12 months, Chang did ask him generally if he was a smoker and Mr. Genovia had responded that he was. Deposition of Conrad Chang at 19.

Because Chang did not specifically reference the last 12 months, it is conceivable that Mr. Genovia's answer referred to his overall smoking history and not specifically to the last 12 months. Chang has stated that it was his understanding that Mr. Genovia's answer did refer to his behavior in the last 12 months, but acknowledges that he may have "said the question wrong," *id.* at 80, or that Mr. Genovia might have taken "it some other way" than in reference to the past 12 months. *Id.* at 128.

Given the uncertainty of Chang's deposition responses and the fact that he never asked Mr. Genovia the specific question regarding the last 12 months, Chang's testimony also does not conclusively establish whether Mr. Genovia smoked during the relevant time period.

\* \* \* \* \* \*

In sum, the court finds that defendants have failed to unequivocally demonstrate the absence of a disputed issue of material fact with respect to whether Mr. Genovia smoked during the relevant time period. Defendants motion for summary judgment on this issue is, therefore, DENIED.

### II. MISREPRESENTATION OF SMOKING HISTORY AND VOIDABILITY OF LIFE INSURANCE POLICY.

In addition to requesting the court to resolve the factual question as to whether Mr. Genovia misrepresented his smoking

history, defendants ask the court hold that such a misrepresentation renders a life insurance policy voidable as a matter of law.

> Under Hawaii state law
>
> A misrepresentation shall not prevent a recovery on the policy unless made with actual intent to deceive or unless it materially affects either the acceptance of the risk or the hazard assumed by the insurer.

Haw.Rev.Stat. § 431:10–209 (1987). Defendants' motion essentially presents this court with two questions: (1) whether a determination of "materiality," in this case, is a question of fact for the jury or a question of law for the court; and (2) if a question of law, whether misrepresentation of smoking history is "material" within the meaning of this statute.

### A. Question of Fact or Law.

■ The application of a given set of facts to a particular rule of law are termed "mixed" questions of fact and law. There has long been confusion as to whether these types of questions should be considered questions of fact or questions of law for purposes of summary judgment and appellate review. An insightful analysis of this issue was set forth by the Court of Appeals for the Ninth Circuit, sitting en banc, in United States v. McConney, 728 F.2d 1195, 1199–1204 (9th Cir.1984) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

McConney dealt with the dilemma of the mixed question of fact and law in the context of appellate review.[1] Essentially, the McConney court held that the court should utilize a functional analysis in determining whether these questions should be considered questions of fact or law. Where the answer to such a question establishes an effective rule of law that could be applied in other cases, it was recommended that the question be treated as one of law.

On the other hand, where the question was so fact-based that the answer would have little application outside the specific case, the court recommended treating the question as one of fact.

In this case, the resolution of whether a misrepresentation of smoking history is "material" under the Hawaii statute would have significant precedential value in other analogous cases. Accordingly, this question will be treated as one of law to be decided by the court.

### B. Materiality of Smoking History Misrepresentation under Haw. Rev.Stat. § 431:10–209 (1987).

■ In Sovereign Life Ins. Co. of California v. Rewald, 601 F.Supp. 1489 (D.Haw.1985), this court addressed, in the context of a life insurance policy, what is meant by the phrase "materially affects either the acceptance of the risk or the hazard assumed by the insurer" as set forth in Haw.Rev.Stat. § 431:10–209. The court concluded that a misrepresentation need not relate directly to life expectancy to be material, but need only relate to the insurance company's decision to insure the risk. Id. at 1494. The Hawaii Supreme Court applied an analogous standard in Leo Dung Dye v. United States Fidelity and Guaranty Company, 31 Haw. 699 (1930), aff'd 52 F.2d 567 (9th Cir.1931), cert. denied, 285 U.S. 537, 52 S.Ct. 311, 76 L.Ed. 930 (1931), holding that a misrepresentation would be material if disclosure of the fact would have influenced the rate of premiums. Id. 31 Haw. at 703.

Although the State of Hawaii has not specifically addressed the question of whether a misrepresentation of smoking status qualifies as "material," it is clear, under the standards set forth in Sovereign Life and Dye, that the misrepresentation alleged in this case would so qualify. It is undisputed that neither insurance company

---

1. In the context of appellate review, those mixed questions which are considered "questions of fact" would be reviewable under the "clearly erroneous" standard, while those treated as "questions of law" would be reviewable "de novo." Although the McConney analysis was applied in the context of appellate review, it is equally applicable at the trial court level for determining which mixed questions should be treated as questions of fact for the jury to resolve and which should be treated as questions of law appropriately decided by the court in summary judgment.

would have issued the non-smoker's policy had the non-smoker's box not been checked off. Both would, instead, have offered a smoker's life insurance policy at a higher premium.

Accordingly, this court holds that the misrepresentation alleged in this case can properly be characterized as "material" within the meaning of Haw.Rev.Stat. § 431:10–209 (1987). This holding is consistent with the holdings of several other jurisdictions that have considered the question of smoking history misrepresentations on life insurance applications. *See, e.g., Parker v. Prudential Ins. Co. of America,* 900 F.2d 772 (4th Cir.1990) (misrepresentation of smoking history is material as a matter of law); *Mutual Benefit Life Ins. Co. v. JMR Electronics Corp.,* 848 F.2d 30 (2d Cir.1988) (misrepresentation as to whether applicant had smoked in the last 12 months was "material" as a matter of law); *Old Line Life Ins. Co. v. Superior Court,* 229 Cal.App.3d 1600, 281 Cal.Rptr. 15 (Cal.App.1991) (denial of summary judgment reversed, summary judgment entered for insurance company where insured had misrepresented smoking habits); *Ives v. Ina Ins. Co.,* 101 Or.App. 429, 790 P.2d 1206 (Or.App.1990) (denial of summary judgment reversed and trial court instructed to enter judgment for insurer where insured had misrepresented smoking history).

Defendants' motion for summary judgment on the legal question of materiality is, therefore, GRANTED.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF PUNITIVE DAMAGES.

Plaintiff has made a claim for tort and punitive damages as a result of defendants' alleged breach of the insurance contract. In their motion, defendants request this court to find, in summary judgment, that "punitive damages are inappropriate because Security and Jackson made [a] reasonable investigation of Mrs. Genovia's claim before rescinding the policies and declining to pay death benefits."

### A. *Legal Standard for Tort and/or Punitive Damages.*

Although defendants' motion purports only to request summary judgment on the issue of *punitive* damages, it appears that defendants are also requesting summary judgment on the issue of compensatory tort damages as well. There is an important distinction between compensatory tort damages, which are allowed, under *Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368 (1972), for certain willful or reckless contractual breaches, and punitive damages, which are allowed under *Masaki v. General Motors Corp.,* 71 Haw. 1, 780 P.2d 566 (1989) for conduct which rises to the level of being "outrageous" or "pseudo-criminal."

Under *Dold,* a party may recover damages for tortious breach of contract if he can show that the contract was "breached in a wanton or reckless manner as to result in tortious injury." *Dold,* 54 Haw. at 22, 501 P.2d 368. However, such a "wanton or reckless" breach of a contract does not automatically justify punitive damages. In *Dold* itself, for example, the court found that the facts of that case did *not* warrant the imposition of punitive damages.

The Hawaii Supreme Court has recently set forth the definitive standard for punitive damages in *Masaki v. General Motors Corp.,* 71 Haw. 1, 780 P.2d 566 (1989). Specifically, the Court stated that " 'something more' than the commission of a tort is required to justify the imposition of punitive damages." *Id.* at 12, 780 P.2d 566. The Court explained the difference between tort and punitive damages, as follows:

> While "[a]n award of compensatory damages may be sufficient when an injury has resulted from well-intentioned, but poorly advised behavior[,] when the defendant's conduct can be characterized as malicious, oppressive, or otherwise outrageous, a stronger sanction is needed."

*Id.* at 8–9, 780 P.2d 566 (quoting Mallor & Roberts, *Punitive Damages: Toward a Principled Approach,* 31 Hastings L.J.

639, 641 (1980)). The Court pointed out that it has

> repeatedly emphasized that "[p]unitive damages may be awarded only in cases where the wrongdoer 'has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations'; or where there has been 'some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.'"

*Id.* 71 Haw. at 12–13, 780 P.2d 566 (quoting *Kang v. Harrington,* 59 Haw. 652, 600–61, 587 P.2d 285, 291 (1978)).

■ A two tier analysis is, therefore, required. A certain level of willful or reckless conduct can cause a simple breach of contract to sound in tort, allowing for the recovery of non-contract damages such as emotional distress. Above and beyond this, egregious or outrageous conduct can justify the imposition of punitive damages.

### B. *Analysis of Facts Underlying Plaintiff's Claims.*

Plaintiff cites three factors in support of her tort and punitive damages claims: (1) that the investigation conducted at the request of the insurance companies was inadequate; (2) that the actions of the two companies breached express language in their own policies; and (3) that defendants should have required Mr. Genovia to undergo chemical testing to confirm his answer to the smoking question. However, as discussed below, none of these factors is sufficiently persuasive to overcome defendants' motion for summary judgment on this issue.

### 1. Sufficiency of the Investigation.

■ Although plaintiff challenges the adequacy of defendants' investigation, she has set forth no facts sufficient to support this claim. Initially, plaintiff rested her claim on the assertion that Duane Kim was confused about the dates that he had seen Mr. Genovia smoking when he filled out the original questionnaire. Now that Kim's deposition has been taken, however, it is clear that he was not misled by the dates on the questionnaire and that he stands by his original answer.

Furthermore, given the relatively large amount of evidence of Mr. Genovia's smoking history, of which, Kim's questionnaire was only one portion, the court finds nothing unreasonable about the insurance companies' course of action. In addition, the court notes that defendants followed standard procedures in determining Mr. Genovia's smoking status. They did not conduct the investigation themselves, but, instead, hired the outside investigation firm of Equifax. Plaintiff has not presented this court with any facts tending to show that defendants were not justified in relying upon the Equifax investigation.

Under the summary judgment standard, even after taking the evidence in the light most favorable to plaintiff, the court cannot find any evidence to support a claim that the decision to deny benefits based on the investigation was "willful," "wanton," or "reckless." And there is certainly no evidence before this court supporting a claim that the insurance companies' conduct was "malicious" or "outrageous" justifying a claim for punitive damages.

### 2. Language of the Policy.

■ Plaintiff's next relies upon the language of the insurance policy itself which states that:

> We [the insurance company] can never deny a benefit unless:
>
> 1. The death or disability happens within 2 years after the date of the application; and
>
> 2. an answer in the application was not true or complete; and
>
> 3. if we had known the truth, we would not have issued the policy.

Plaintiff claims that defendants are breaching their own policy because "[t]he representative of Security Mutual testified that, had they discovered in the course of their evaluation of an application that the smoking question was incorrectly answered, the company would simply have offered the same policy, but at an adjusted premium." Plaintiff's Opposition at 9.

This argument presumably goes toward establishing a "willful" breach. Closer

analysis, however, reveals that plaintiff's argument is merely a rhetorical fiction. The so-called "same policy" offered at a different premium is, in fact, a *different policy*, designed to insure a .different risk—the life of a smoker as opposed to a non-smoker. Because defendants clearly did not violate the terms of their. policy, plaintiff's argument cannot be used to support her claim for tort or punitive damages.

### 3. Defendants' Failure to Utilize Chemical Testing for Cigarette Smoking.

■ Plaintiff's final argument in support of her claim for tort damages is that defendants did not utilize chemical testing for cigarette smoking to verify the answers given by applicants. Plaintiff claims that "[m]any, if not most, of these alleged misrepresentations could easily have been put to rest at the very outset of the application process had the companies only bothered to spend the $7 or $10 for a urine test."

This argument is utterly fallacious. It essentially condones insurance fraud and argues that insurance companies should be penalized for failing to detect such fraud at the outset. Adoption of this position would be tantamount to declaring open season on insurance fraud because, not only will this court refuse to punish those who so engage, but those who engage in insurance fraud may even be entitled to an extra bonus in the form of a punitive damages award should the insurance company fail to detect the fraud.

This is such an absurd position that it hardly justifies a response by this court and clearly provides no support for a claim of either tort or punitive damages.

\*   \*   \*   \*   \*   \*

In sum, plaintiff has presented no evidence which supports her claim for tort or punitive damages. Defendants' motion for summary judgment on these claims is, therefore, GRANTED.

## IV. HAWAII STATUTORY AND COMMON LAW CAUSES OF ACTION.

Finally, defendants request this court to find that plaintiff either lacks standing, or fails to state a cause of action for the following three claims: (1) unfair claim settlement practices under Haw.Rev.Stat. § 431:13–101 et seq.; (2) unfair competition under Haw.Rev.Stat. § 480–2; and (3) common law "bad faith" breach of insurance contract.

### A. *Unfair Claim Settlement Practices under Haw.Rev.Stat. § 431:13–103(a)(10).*

■ In paragraph 13 .of her complaint, plaintiff claims that defendants' actions constitute a violation of the unfair claims settlement practices act, H.R.S. § 431:13–101 *et seq.* It appears that plaintiff means to bring her claim specifically under Haw. Rev.Stat. § 431:13–103(a)(10) (Supp.1991). Defendants argue that this claim should be dismissed because this statute does not authorize private causes of action.

Article 13 of the Hawaii Insurance Code sets forth an overall regulatory scheme to address the problem of "unfair methods of competition and unfair and deceptive acts and practices in the business of insurance." [2] The statute was clearly directed toward regulatory, as opposed to private, enforcement.[3] This is confirmed by an ex-

---

**2.** Haw.Rev.Stat. § 431:13–101 states that
The purpose of this article is to regulate trade practice in the business of insurance in accordance with the intent of the Congress of the United States as expressed in the act of Congress of March 9, 1945 ... by defining, or providing for the determination of, all acts, methods, and practices which constitute unfair methods of competition or unfair or deceptive acts or practices in this State, and by prohibiting the trade practices so defined or determined.

**3.** For example, the substantive provisions of the statute are not particularly conducive to private

enforcement. Haw.Rev.Stat. § 431:13–103(a)(10) defines as unfair claim settlement practices as any of a long list of practices when "[c]ommit[ed] or perform[ed] with such frequency as to indicate a general business practice." Under this statute, an isolated incident, as would form the basis for a private cause of action, cannot be challenged under this section. The clear inference is that the statute was meant to be a regulatory statute, enforceable by the insurance commissioner in cases where a company repeatedly utilizes such unfair practices, not a statute granting private remedies to aggrieved individuals.

press provision delegating all enforcement authority exclusively to the Hawaii Insurance Commissioner:

> All remedies, penalties and proceedings set forth in this article are to be invoked solely and exclusively by the commissioner.

Haw.Rev.Stat. § 431:13–107.

Accordingly, to the extent that plaintiff is attempting to bring a private cause of action under Article 13 of the Hawaii Insurance Code, such claim is DISMISSED on grounds of standing as the Hawaii Legislature has expressly denied private litigants, such as plaintiff, standing to enforce these provisions.[4]

**B.** *Unfair Methods of Competition and Unfair or Deceptive Acts or Practices under Haw.Rev.Stat. § 480–2.*

■■■ Plaintiff also attempts to state a cause of action under Haw.Rev.Stat. § 480–2. That section provides that

> [u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

Haw.Rev.Stat. § 480–2(a). Defendants argue that this section is unavailable in the insurance context. The court agrees.

> Haw.Rev.Stat. § 431:1–104 states that: Provisions of [the insurance] code relating to a ... particular matter prevail over provisions relating to ... such matter in general.

In this case, plaintiff is attempting to bring a claim under the generic "Unfair Methods of Competition and Unfair or Deceptive Acts or Practices" provisions of Haw. Rev.Stat. § 480–2. However, as is noted above, the Hawaii Insurance Code contains a statutory section which specifically addresses the problem of "Unfair Methods of Competition and Unfair and Deceptive Acts and Practices *in the Business of Insurance.*" *See* Haw.Rev.Stat. §§ 431:13–101 to 431:13–204 (emphasis added).

Under Haw.Rev.Stat. § 431:1–104, it is clear that this specific provision would prevail over the generic "Unfair Methods of Competition and Unfair or Deceptive Acts or Practices" provisions of Haw.Rev.Stat. § 480–2. The court finds, therefore, that an insurance company may not be sued under § 480–2, with respect to conduct performed in the course of its insurance business, as such conduct would be governed by the more specific provisions set forth in Haw.Rev.Stat. §§ 431:13–101 to 431:13–204. The fact that there are standing limitations associated with the insurance code provisions, as discussed in Part A above, does not mitigate their preemptive effect.

Accordingly, defendants' motion to dismiss plaintiff's Haw.Rev.Stat. § 480–2 claim is GRANTED.[5]

**C.** *"Bad faith" Claim.*

■■■ In her complaint, plaintiff appears to state a cause of action for breach of the "covenant of good faith and fair dealing implied in every contract of insurance" [hereinafter "bad faith claim"]. Complaint, at ¶ 15. It is true that the state of Hawaii recognizes the existence of such an implied covenant. *See, e.g., Gerner v. Estate of James Campbell,* 72 Haw. 4, 5, 803 P.2d 199 (1990). However, defendants argue

In addition, the Insurance Commissioner is expressly given the authority to investigate and enforce the provisions of Article 13. *See* Haw. Rev.Stat. §§ 431:13–105 (power to investigate), 431:13–106 (hearings).

**4.** This holding is consistent with a number of unpublished decisions from this district. *See e.g. Lawyers Title Ins. Co. v. Honolulu Federal Savings and Loan Ass'n,* Civil No. 85–1330, at 23–24 (D.Haw. Aug. 14, 1991); *Sandberg v. Liberty Mutual Ins. Co.,* Civil No. 89–00155 ACK, at 2–3 (D.Haw. June 9, 1989); *King's Bakery, Inc. v. Maryland Casualty Co.,* Civil No. 87–0867, at 9–10 (D.Haw. Dec. 30, 1988); *National Union*

*Fire Ins. Co. v. Pacific Resources, Inc.,* Civ. No. 84–1188, at 11–12 (D.Haw. Jan. 14, 1987); *JMN Jewelers, Inc. v. Jewelers Mutual Ins. Co.,* Civil No. 80–503, at 4–5 (D.Haw. July 26, 1985).

**5.** Again, the court notes that its holding is consistent with numerous unpublished cases from this district. *See e.g. King's Bakery, Inc. v. Maryland Casualty Co.,* Civil No. 87–0867, at 10 (D.Haw. Dec. 30, 1988); *Sandberg v. Liberty Mutual Ins. Co.,* Civil No. 89–00155 ACK, at 2–3 (D.Haw. June 9, 1989); *Mitchell v. State Farm Mutual Automobile Ins. Co.,* Civil No. 85–1509, at 2 (D.Haw. Feb. 12, 1987).

that this claim should be dismissed to the extent it seeks to state a cause of action in tort.

The state of California has developed an extensive body of law with respect to the tort cause of action termed "breach of the implied covenant of good faith and fair dealings." *See, e.g., Seaman's Direct Buying Service v. Standard Oil Co.,* 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158 (Cal.1984). It is true that Hawaii has, in the past, borrowed law from the state of California, however, such is not the case in the area of bad faith. Although no Hawaii court has considered the bad faith cause of action with respect to insurance contracts, the possibility of recognizing such a cause of action for employment contracts was considered and rejected by the Hawaii Supreme Court in *Parnar v. Americana Hotels,* 65 Haw. 370, 652 P.2d 625 (1982). In *Parnar,* the Court stated:

> [We cannot] discount the trend to submit the employer's power of discharge to close judicial scrutiny in appropriate circumstances. But to imply into each employment contract a duty to terminate in good faith would seem to subject each discharge to judicial incursions into the amorphous concept of bad faith. We are not persuaded the protection of employees requires such an intrusion on the employment relationship or such an imposition on the courts. We, therefore, hold that the lower court did not err in granting summary judgment as to Count II, which we construe as the bad-faith discharge claim.

65 Haw. at 377, 652 P.2d 625.

To date, this court is unaware of a single published Hawaii state court decision which has adopted the California-style tortious bad faith cause of action in any context. In the absence of such state authority, this court, sitting in diversity jurisdiction, would be overstepping the bounds of its

authority if it were to adopt such a new theory of tort liability. The court is particularly hesitant to create additional causes of actions where plaintiffs have other theories of recovery available for redress. In the instant case, for example, although the state of Hawaii does not recognize a cause of action for "tortious bad faith," it does recognize a similar cause of action for "tortious breach of contract" under *Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368 (1972). A *Dold* claim would, therefore, be the appropriate theory of recovery in this context.

Accordingly, to the extent that plaintiff purports to state a cause of action for California-style tortious "bad faith" in addition to her claim for "tortious breach of contract," defendants' motion to dismiss is GRANTED.[6]

IT IS SO ORDERED.

---

**6.** This decision is consistent with numerous published and unpublished decisions from this district. *See e.g. Paulson, Inc. v. Bromar, Inc.,* 775 F.Supp. 1329, 1336 (D.Haw.1991); *King's Bakery, Inc. v. Maryland Casualty Co.,* Civil No. 87–0867, at 7–9 (D.Haw. Dec. 30, 1988); *Mitchell v. State Farm Mutual Automobile Ins. Co.,* Civil No. 85–1509, at 2 (D.Haw. Feb. 12, 1987); *State Farm Fire and Casualty Co. v. Albert,* Civil No. 84–0919, at 9–11 (D.Haw. March 13, 1986); *National Union Fire Ins. Co. v. Pacific Resources, Inc.,* Civil. No. 84–1188, at 9–10 (D.Haw. Jan. 14, 1987).