Sherry GASAWAY, Plaintiff–Appellant,

v.

NORTHWESTERN MUTUAL LIFE IN-SURANCE COMPANY, an Oregon corporation; John Does 1–10; Doe Partnerships 1–10; Roe Corporation, Defendants–Appellees.

No. 93–16235.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1994.

Decided June 9, 1994.

Dennis W. Potts, Honolulu, HI, for plaintiff-appellant.

Richard B. Miller, McCorriston Miho Miller & Mukai, Honolulu, HI, for defendants-appellees.

Before: FARRIS, BEEZER and RYMER, Circuit Judges.

Opinion by Judge RYMER.

RYMER, Circuit Judge:

Sherry Gasaway appeals the district court's summary judgment in favor of Northwestern Mutual Life Insurance Co. (NML) on its counterclaim for rescission of Gasaway's disability insurance policy based on

material misrepresentations in her application. *See Gasaway v. Northwestern Mut. Life Ins. Co.*, 820 F.Supp. 1241 (D.Haw.1993). This court has jurisdiction, 28 U.S.C. § 1291, and we affirm.

## I

Gasaway was an agent for NML who first applied for an NML life insurance policy in April 1989. NML underwriters obtained copies of Gasaway's medical records from her personal physician (Dr. Dierdorff) which indicated that Gasaway had complained of chronic fatigue syndrome since April 1988 and that Sinequan was prescribed to alleviate depression associated with that illness. She also had a medical examination as part of the application process. In July 1989, Gasaway applied for a second NML life insurance policy; that application had no new medical information.

In December 1989, Gasaway applied for an NML disability insurance policy. She underwent another medical exam and filled out another questionnaire in which she answered "no" to all questions relating to prior disabilities, conditions, or treatments, except that she acknowledged her prior physical exam and tests in April 1989. NML also obtained medical records from Gasaway's gynecologist which revealed chronic gynecological problems for which a diuretic, Dyazide, was prescribed. After the standard audit and underwriting process was completed, NML issued a disability policy.

Sometime between February and April 1990, Gasaway became disabled and stopped working. She was later diagnosed with fibrositis, a condition of diffuse muscle aches and pains and associated fatigue often secondary to a sleep disorder, and classified as totally disabled.

In July 1990, she filed a claim for disability benefits. Because the claim was filed and the disability occurred shortly after her coverage began, NML conducted an investigation which revealed that Gasaway failed to state that she made numerous visits to other doctors for serious health problems, such as myalgia (muscle pain) and hypokalemia (deficiency of potassium in blood), generalized anxiety disorder, and depression. Gasaway was still taking Dyazide and Sinequan, and in excess of her prescribed dosages, even though her application stated that she was not taking any medication; Dr. Dierdorff's records indicated that he instructed the pharmacist to discontinue dispensing Dyazide to Gasaway. Gasaway's abuse of these prescriptions also caused the Honolulu prosecutor's office and the Hawaii State Department of Health, Investigation and Narcotics Control Section to investigate her. NML also learned that Gasaway had been treated for depression in 1983 or 1984 for which she received disability benefits and sought psychotherapy in 1988, though this was not included in her applications.

As a result, NML denied her benefits. Gasaway filed suit, and NML brought a counterclaim for rescission based on Gasaway's misrepresentations. In support of its summary judgment motion, NML submitted affidavits from Patricia Westphal, an NML underwriter, which stated that, had Gasaway disclosed this information to NML, NML would have rejected her application. The district court granted NML's motion for summary judgment, concluding that Gasaway made misrepresentations which were material to the risk NML assumed. 820 F.Supp. at 1246, 1248.

## II

■ In order to rescind Gasaway's policy, NML is required to show that her statements were misrepresentations and that they either were made with intent to deceive or materially affected acceptance of the risk or the hazard assumed by NML.[1] Gasaway does not argue that her representations on the disability application were not false. Rather, she argues that her misrepresentations were not material because NML already had, or could obtain, the information Gasaway omitted from other sources, and because there was no causal link between the

---

1. "A misrepresentation shall not prevent a recovery on the policy unless made with actual intent to deceive or unless it materially affects either the acceptance of the risk or the hazard assumed by the insurer." Haw.Rev.Stat. § 431:10–209 (1987).

misrepresentations and her ultimate disability.

Gasaway first urges us to adopt Hawaii's "remedial" policy of viewing insurance policies as adhesion contracts which are construed in favor of insureds. *See AVEMCO Ins. Co. v. Chung,* 388 F.Supp. 142 (D.Haw. 1975). The policy is not germane, however, as the issue here involves a statute, not an insurance policy drafted by the insurer.[2]

Gasaway's argument that NML had at least constructive knowledge of many of the risks at issue fails because regardless of the information from prior applications, NML was never told about excessive use of prescription drugs, her history of treatment for mental and muscle disorders, including myalgia and hypokalemia, her psychiatric treatment prior to 1985, and her previous disability benefits. We agree with the district court that these conditions are relevant to the risk assumed.

Gasaway's argument that there must be a causal nexus between misrepresentations in the policy application and the medical condition which creates the disability also fails because under Hawaii law, a misrepresentation "need only relate to the insurance company's decision to insure the risk." *Genovia v. Jackson Nat'l Life Ins. Co.,* 795 F.Supp. 1036, 1041 (D.Haw.1992); *see also Sovereign Life Ins. Co. v. Rewald,* 601 F.Supp. 1489, 1494 (D.Haw.1985).[3] As the evidence is uncontroverted that had Gasaway's true medical history been disclosed, NML would not have written her policy, summary judgment was appropriately granted.

**2.** This distinguishes *AVEMCO* and *Bayers v. Omni Aviation Managers, Inc.,* 510 F.Supp. 1204 (D.Mont.1981), on which Gasaway relies. Both cases deal with policies which the courts construed against their drafters, the insurers, rather than a statute.

**3.** In this view, Hawaii is in accord with the majority rule. *See, e.g., New York Life Ins. Co. v. Johnson,* 923 F.2d 279, 282 (3d Cir.1991) (Pennsylvania statute analogous to Hawaii law); *New York Life Ins. Co. v. Wittman,* 813 F.Supp. 1287, 1297, 1299 (N.D.Ohio 1993) (Ohio statute); William H. Danne, Jr., Annotation, *Modern Status of Rules Regarding Materiality and Effect of False Statement By Insurance Applicant as to Previous*

## III

Gasaway argues that NML failed to meet its evidentiary burden in support of its summary judgment motion as the Westphal affidavits submitted by NML were insufficient as a matter of law. She also contends that the district court should not have applied the *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) standard because NML had the burden of proof on the rescission counterclaim.[4]

NML met its burden of proving the absence of any genuine issue of material fact that Gasaway's misrepresentations materially affected the acceptance of the risk through the Westphal affidavits. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Hopkins v. Andaya,* 958 F.2d 881, 884 (9th Cir.1992); *Jackson Nat'l Life Ins. Co. v. Proper,* 760 F.Supp. 901, 907 (M.D.Fla.1991) (relying on underwriter's affidavit to establish materiality of insured's medical history).

"[O]nce the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence sufficient to support a jury verdict in her favor." *Hopkins,* 958 F.2d at 884–85 (citing *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514). This requires the nonmoving party to "go beyond the pleadings and show 'by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file,' that a genuine issue of material fact exists." *Id.* at 885 (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553). "[A]n adverse party may not rest upon the

*Insurance Cancellations or Rejections,* 66 A.L.R.3d 749, 786 (1975) (general rule is that "where the applicable misrepresentation statute does not expressly provide that the matter misrepresented must actually contribute to a loss in order to furnish a basis for policy avoidance, the courts have refused to impose such a requirement as a matter of construction.").

**4.** Her contention that NML must prove that her misrepresentations were intentional by "clear and convincing evidence" is misplaced as this standard only applies to fraud, *Hawaii's Thousand Friends v. Anderson,* 70 Haw. 276, 768 P.2d 1293, 1301 (1989), which is not at issue here.

mere allegations or denials of [her] pleadings." Fed.R.Civ.P. 56(e).

Gasaway offered no witnesses, depositions, or affidavits to contradict NML's position. Instead she argued that Westphal's conclusions were nothing more than self-serving speculation that should be disregarded. This is nothing more than "mere allegations or denials" which are insufficient to overcome NML's showing. That being so, the materiality of the misrepresentations is such that "reasonable minds could reach only one conclusion as to whether the answer was true or false." *Howell v. Colonial Penn Ins. Co.,* 842 F.2d 821, 823 (6th Cir.1987). Therefore, summary judgment was appropriate. *Id.; Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179, 183 (2d Cir.), *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 162 (1984).

 Gasaway's reliance on *Vanatta v. Pacific Guardian Life Ins. Co., Ltd.,* 1 Haw. App. 294, 618 P.2d 317, 319–20 (1980) (per curiam), where the court held that the question of actual intent to deceive is not amenable to summary disposition, is misplaced because it is a Hawaii state court case construing the Hawaii Rules of Civil Procedure. In diversity cases, procedural issues related to summary judgment are controlled by federal law. *Caesar Elecs. Inc. v. Andrews,* 905 F.2d 287, 289 n. 3 (9th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 518, 112 L.Ed.2d 529 (1990). "[F]ederal law alone governs whether evidence is sufficient to raise a question for the trier-of-fact." *Bank of California, N.A. v. Opie,* 663 F.2d 977, 979 (9th Cir. 1981). So *Celotex* and *Anderson* control, not *Vanatta.*

Gasaway also argues that Westphal's affidavits are inadequate because they do not refer to an NML underwriting manual and because Westphal made medical conclusions on which she was not qualified as an expert. Fed.R.Civ.P. 56(e). However, Gasaway cites no case stating that underwriters must use written guidelines or even normally use them. Gasaway made no objection that the Westphal affidavits contain "medical conclusions and opinions," nor did she move to strike the affidavits on this ground. The objection is therefore waived. *Allen v. Scrib-*

*ner,* 812 F.2d 426, 435 n. 18 (9th Cir.), *amended,* 828 F.2d 1445 (9th Cir.1987).

### IV

NML has requested attorney's fees for the appeal on several grounds pursuant to Haw. Rev.Stat. § 607–14 (assumpsit actions), § 607–14.5 (frivolous actions), and § 607–15.5 (tort actions). We remand for a determination of attorney's fees pursuant to Haw.Rev. Stat. § 607–14 only.

AFFIRMED; REMANDED for determination of attorney's fees.