24 F.3d 246
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 GOVERNMENT EMPLOYEES INSURANCE COMPANY, Plaintiff-Appellee,
v.
Marcos CABUDOL, Jr., Defendant-Appellant.
 No. 92-16904.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided May 10, 1994.
 
 Before: POOLE, WIGGINS, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. FACTS AND PRIOR PROCEEDINGS
 
 2
 Appellant Marcos Cabudol, Jr. ("Appellant") was involved in an automobile accident on July 27, 1990 while insured by appellee Government Employee's Insurance Company ("Appellee") under a no-fault policy and uninsured motorist coverage. Four days later, he sought treatment from his own doctor.
 
 
 3
 The policy provided, as permitted by Hawaii Administrative Rule Sec. 16-23-60, that "[t]he injured person shall submit to examination chosen by us and at our expense as we may reasonably require." Appellee, pursuant to the no-fault policy, requested that Appellant undergo such an examination, known as an independent medical examination ("IME"), on October 1. Appellant's counsel requested copies of the no-fault records before submitting to the IME, which were delivered by Appellee. Appellee renewed its request, but Appellant's counsel requested that treatment records first be obtained from Appellant's physician. Appellee issued a formal denial of benefits on November 8, 1990, based on the failure to submit to an IME.
 
 
 4
 Appellant sought administrative review of this denial. Appellee requested another IME pursuant to the uninsured motorist coverage; Appellant's counsel responded that the request was premature due to the pending matter. The hearing before the Insurance Division of the Department of Commerce and Consumer Affairs was held on May 14, 1991. Four days later, Appellant was involved in another accident, sustaining injuries to the same anatomical areas. On August 9, unaware of the second accident, the hearings officer announced her conclusions, stating that the initial denial of benefits was proper, though the procedural denial did not necessarily preclude Appellant from receiving further no-fault benefits. Appellant sought and obtained review of that decision before the Insurance Commissioner, which affirmed the hearing officer's holding.
 
 
 5
 On September 16, 1991, over a year after the original accident and nearly four months after the second, Appellant offered to make himself available for an IME to preserve his rights. On November 15, 1991, Appellee filed a complaint in the District Court for declaratory judgment to deny Appellant further coverage under the no-fault and uninsured motorist insurance. The court granted Appellee's motion for summary judgment on the grounds that Appellant's delay in submitting to the IME was a breach of the insurance contract and that the breach prejudiced Appellee. This appeal follows.
 
 II. BREACH AND PREJUDICE
 
 6
 The classical contractual approach to insurance contracts was that any "material" breach of the terms of the policy voided coverage. The past several decades have produced a strong trend toward a requirement that the insurer show that it has been prejudiced by the insured's breach of a duty imposed by the contract. See generally Charles C. Marvel, Annotation, Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers, 32 A.L.R.4th 141 (1984). A federal district court has held that Hawaii law follows the modern trend and requires a showing of prejudice. AVEMCO Ins. Co. v. Chung, 388 F.Supp. 142 (D.Haw.1975). In addition, the Hawaii Supreme Court has applied a prejudice test with respect to notice provisions in an insurance contract. Standard Oil Co. of Cal. v. Hawaiian Ins. & Guar. Co., 654 P.2d 1345, 1348 & n. 4 (Haw.1982). In Standard Oil, the court quoted approvingly Miller v. Marcantel, 221 So.2d 557, 559 (La.App.1969), saying that "[t]he function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice...." Therefore, it seems clear that Hawaii law requires a showing of prejudice to void coverage on the basis of a breach of a condition subsequent, such as IME attendance.
 
 
 7
 Appellant would have this court hold that Hawaii now imposes an even more demanding standard. His argument that both "material" breach and "substantial" prejudice are necessary rests primarily on a New Mexico case, Foundation Reserve Ins. Co. v. Esquibel, 94 N.M. 132, 607 P.2d 1150 (1980). That case is not persuasive authority for Appellant's position. While New Mexico has chosen to use the words "material" and "substantial" in its decisional law, authority is lacking for either of the premises necessary to complete Appellant's argument: (1) that such a standard is either the law of Hawaii or a pervasive modern trend that should be imputed to Hawaii, and (2) that the use of those words raises the threshold showing required to declare coverage void so that the factual determinations made by the district court were insufficient as a matter of law.
 
 
 8
 The Esquibel court employed a peculiar choice of words. The qualifier "material" is ordinarily used to describe a breach of a condition precedent that merits denial of coverage, such as a significant misrepresentation that would have affected the insurer's decision to accept the risk. See Gasaway v. Northwestern Mut. Life Ins. Co., 820 F.Supp. 1241 (D.Haw.1993); Sovereign Life Ins. v. Rewald, 601 F.Supp. 1489, 1493-94 (D.Haw.1985). In other cases, usually involving the breach of a condition subsequent, a more restrictive standard is frequently used--whether "prejudice" resulted from the breach. The modern trend is to refuse to presume prejudice from a breach of a condition subsequent, even if that breach could be seen as material in the ordinary sense. MFA Mutual Ins. Co. v. Sailors, 180 Neb. 201, 204, 141 N.W.2d 846, 848-849 (1966) (cited by Esquibel, 607 P.2d at 1152). However, because prejudice is a more demanding standard than materiality, a prejudicial breach still implies a material breach. One of the cases upon which Esquibel relied for its standard put it slightly differently, explaining that prejudice is to a condition subsequent what materiality is to other types of breach. "An alleged breach of [a condition subsequent] may be considered substantial and material, and may affect a release of an insurer from its responsibilities only if the insurer was actually prejudiced by the insured's actions or conduct." Oregon Auto. Ins. Co. v. Salzberg, 535 P.2d 816, 819 (Wash.1975) (emphasis in original); see also Security Mut. Casualty Co. v. O'Brien, 99 N.M. 638, 639-40, 662 P.2d 639, 640-41 (1983) (distinguishing Esquibel because the issue of prejudice is relevant to conditions subsequent, not policy exclusions). Thus, to ask whether the breach is material when it is already known that it caused prejudice would be redundant. Therefore, we conclude that the district court employed the correct legal standard by requiring a showing of prejudice, but not of materiality.
 
 
 9
 The next question is whether a finding must be made that the prejudice was "substantial." A few jurisdictions have chosen to employ that modifier, but there is no authority stating that Hawaii has done so. Moreover, those jurisdictions that use a substantial prejudice standard give no instruction on how that differs from plain prejudice and frequently use "substantial prejudice" interchangeably with the unmodified word. See Baumler v. State Farm Mutual Auto. Ins. Co., 493 F.2d 130, 134 (9th Cir.1974) (declining to evaluate jury instruction on "substantial prejudice" because it was submitted by appellant and citing Lindus v. Northern Ins. Co., 438 P.2d 311 (Ariz.1968), which nowhere uses the word "substantial" in its discussion of prejudice.) Because there is no authority that "substantial prejudice" differs from ordinary "prejudice," we find no error in the formulation employed by the district court.
 
 
 10
 Even assuming arguendo that Hawaii would use the word "substantial," and that such word has some discernible meaning, there is no authority for the premise that the specific meaning of "substantial" is that the insurer must show a greater degree of prejudice. No case that we have seen has attempted to delineate such a threshold. In fact, the best and most authoritative interpretation of "substantial" as it modifies "prejudice," is that it means "actual," as opposed to "speculative." See Esquibel, 607 P.2d at 1150 (presenting issue as question of whether breach is sufficient to void the policy, "or must the insuror [sic] also demonstrate actual prejudice resulting from the breach?"); Baumler, 493 F.2d at 135; M.F.A. Mut. Ins. Co. v. Cheek, 363 N.E.2d 809, 813 (Ill.1977) (holding that "[p]roof of substantial prejudice requires an insurer to demonstrate that it was actually hampered in its defense by the violation of the [condition subsequent]").
 
 
 11
 Given that understanding of substantial prejudice, it is clear that the prejudice found by the district court would have to be considered "substantial." Appellee claims that it faces actual loss as a result of the conjunction of the failure promptly to attend an IME and the second accident. The insurer has not attempted to abrogate all coverage solely on the basis of a breach that only creates prospective risk--for example, voiding the policy for failure to attend an IME because there might be a second accident in the future. Thus, the prejudice to the insurer was substantial prejudice.
 
 
 12
 We decline to hold for the state of Hawaii that it follows New Mexico law in phrasing its criteria for voiding coverage. The district court did not err in concluding that the breach by Appellant and attendant prejudice to Appellee were sufficient to release Appellee from the policy.
 
 III. SUMMARY JUDGMENT AND RECONSIDERATION
 
 13
 Appellant contends that there exist substantial questions of material fact as to the existence of a breach or prejudice. This argument is also unpersuasive.
 
 
 14
 The district court held that Cabudol's breach of the insurance contract was established by the state proceeding and that such a finding was entitled to preclusive effect under University of Tenn. v. Elliott, 478 U.S. 788, 799 (1986). Appellant does not contest this decision, but instead argues that the breach was not material. That argument is misguided for the reasons stated above. That leaves only the question of the existence of prejudice.
 
 
 15
 Prior to the granting of the motion for summary judgment, appellee offered uncontroverted evidence that it was prejudiced in its ability to mount a defense of apportionment by Cabudol's failure to attend an IME prior to the second accident. The district court applied the proper law by finding prejudice, and there was no genuine issue of material fact created by the appellant. Therefore, summary judgment was properly granted.
 
 
 16
 It was not until the motion for reconsideration of the judgment that Appellant proffered two affidavits claiming that apportionment would be possible. We review a denial of a motion for reconsideration for an abuse of discretion. Fuller v. M.G. Jewelry, 950 F.2d 1437, 1441 (9th Cir.1991); Fiester v. Turner, 783 F.2d 1474, 1475-76 (9th Cir.1986). There was no abuse of discretion in refusing to reconsider the judgment on the basis of these affidavits. Under the circumstances of this case, the prejudice consists of the fact that in order to assert a defense of apportionment Appellant must either rely on Appellee's incontrovertible representations about his earlier medical condition or be subject to an inaccurate or arbitrary apportionment. The affidavits proffered by Appellant do not dispute prejudice by asserting the existence of independent or objective evidence sufficient accurately to apportion the injuries. In fact, the evidence actually tends to underscore the prejudice by presenting only a self-serving, arbitrary apportionment and an opinion that some sort of apportionment may still be achieved on the basis of records provided by Cabudol. These allegations do not rebut the finding that Appellee was prejudiced in its ability to mount a defense of apportionment. Therefore, the district court did not err in refusing to reconsider its grant of summary judgment on the basis of these allegations.
 
 IV. RIPENESS
 
 17
 Appellant argues that the claim for declaratory relief with respect to the uninsured motorist ("UM") coverage was nonjusticiable, and thus not a proper subject of the grant of summary judgment, because appellant had not yet filed a claim for benefits under that coverage.
 
 
 18
 The constitutional case or controversy requirements apply to actions arising under the Declaratory Judgment Act, 28 U.S.C. Sec. 2201. These requirements, however, do not include the declaratory judgment plaintiff's waiting until a claimant is ready to file his own suit. "Basically, the question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1940). "A justiciable case or controversy exists if a declaration would affect substantive legal rights of the parties." Mason v. Genisco Tech. Corp., 960 F.2d 849, 853 (9th Cir.1992).
 
 
 19
 In this case, it is clear that all of the substantial events creating legal liability, or establishing the lack thereof, under the UM policy have already occurred. The filing of the claim is totally within the power of Appellant, and it is unquestionably in his interest to do so. Appellant has not even alleged that it is at all probable that he will not file a claim, and a letter from his counsel to Appellee indicated that "this is a UM claim," and suggested that "we can now proceed to discuss the UM." The substance and immediacy of the legal interests are undeniable. Under the Declaratory Judgment Act, an insurer need not wait until the insured institutes legal action to assert its defenses. Aetna Cas. and Sur. Co. v. Merritt, 974 F.2d 1196, 1199 (9th Cir.1992). Therefore, the district court had proper subject matter jurisdiction to dispose of the cause of action pertaining to the UM coverage.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3