**Frank FORD, Plaintiff–Appellant,**

v.

**MANUFACTURERS HANOVER MORTGAGE CORPORATION, et al., Defendants/Appellees.**

**MANUFACTURERS HANOVER MORTGAGE CORPORATION, Third Party Plaintiff,**

v.

**Joan KENEGOS, Third Party Defendant.**

**No. 86–5789.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1987.

Decided Nov. 10, 1987.

Kenneth E. Roberson, Los Angeles, Cal., for plaintiff-appellant.

Maiden, Rosenbloom, Wintraub & Fridkis, Alvin D. Rosenbloom, Cliff Fridkis and Steven E. Shapiro, Los Angeles, Cal., for defendants-appellees.

Before SCHROEDER, NELSON and NORRIS, Circuit Judges.

NELSON, Circuit Judge:

Under a standard deed of trust on real property, the trustor is generally required to maintain fire insurance on the property. The trust deed often also provides that, in the event of a fire loss, the trust deed beneficiary has the option of (1) applying the insurance proceeds to the trustor's outstanding indebtedness on the promissory note secured by the trust deed, or (2) allowing the trustor to use the proceeds to rebuild the fire-damaged property.

Under California law, however, "the right of a beneficiary to apply insurance proceeds to the balance of a note ... must be performed in good faith and with fair dealing and ... to the extent the security is not impaired the beneficiary must permit those proceeds to be used for the cost of rebuilding." *Schoolcraft v. Ross*, 81 Cal. App.3d 75, 77, 146 Cal.Rptr. 57, 58 (1978).

This case presents the issue whether, under California law, a trust deed beneficiary is required by its implied covenant to permit a trustor to use fire insurance proceeds to rebuild his residence when (1) the trustor was in long-standing material default on his promissory note prior to the fire, (2) the trustor's promissory note and accumulated interest had become due and payable in full, and (3) the trust deed beneficiary was entitled to sell the trustor's property at any time. We hold that, under these circumstances, a trust deed beneficiary is not required by California law to permit a trustor to rebuild. We affirm the district court's entry of summary judgment in favor of defendant/appellee Manufacturers Hanover Mortgage Corporation ("MHMC") and against plaintiff/appellant Frank Ford.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. On July 11, 1979, Frank Ford bought a single-family residence ("the property") in Los Angeles and financed the purchase by executing a promissory note and deed of trust on the property in favor of Pacific Mortgage Corporation. Ford made no down payment, and the purchase price and amount of the note was $63,000.

Ford's note and trust deed were later acquired by Genstar Mortgage ("Genstar"). Genstar assigned the loan and trust deed to defendant MHMC on or about August 18, 1983.

By September 4, 1980, Ford had defaulted on his note and deed of trust, and the trustee recorded a Notice of Default and Election to Sell pursuant to Cal.Civ.Code § 2924 (West 1974). Ford's right to reinstate the note expired three months later on or about December 4, 1980, see Cal.Civ. Code 2924c(a) (West 1974), and at all times thereafter (except during Ford's subsequent bankruptcy), the entire balance of principal and accumulated interest has been due and payable in full.[1]

On May 21, 1981, Ford filed a bankruptcy petition under Chapter 13 of Title 11. After Ford defaulted under a workout negotiated with Genstar, the bankruptcy court orally granted Genstar's motion for relief from the automatic stay in June, 1982 so that Genstar could proceed with a trustee's sale. The court's written order, however, was not signed until January, 1983.

---

**1.** In 1985, Cal.Civ.Code § 2924c was amended to provide that a trustor may generally cure a default and reinstate the note and trust deed at any time prior to five days before the trustee's sale of the property. *See* Cal.Civ.Code 2924c(e) (West Supp.1987). The 1985 amendment only applies to "foreclosure proceedings commenced by the recordation of a notice of default record- ed on or after January 1, 1986." 1985 Cal.Stat. ch. 1206 § 7. In this case, the trustee recorded the notice of Ford's default in 1980, and Ford was only entitled to cure his default and reinstate his note and deed of trust by tendering the entire amount then due MHMC "within three months of the recording of the notice of default." Cal.Civ.Code § 2924c(a) (West 1974).

On October 1, 1982, Ford's property was substantially damaged by fire. The Los Angeles Fire Department concluded that the fire was deliberately set, but the arsonist was never identified.

At the time of the fire, the property was insured by The Travelers Indemnity Company ("Travelers"). Under Ford's deed of trust, the trust deed beneficiary had the option of either applying the insurance proceeds to reduce Ford's indebtedness or to rebuild the property.

Ford retained attorney Joan Kenegos to negotiate with Travelers, and in August, 1983, Travelers issued a check for $31,100 payable jointly to Ford, Kenegos, and Genstar. Travelers also agreed to pay out an additional $39,000 in replacement coverage if and when the property was rebuilt.

Kenegos notified Genstar that Ford intended to rebuild and requested that Genstar endorse the $31,100 check. Genstar endorsed the check and informed Kenegos that Ford's note and deed of trust had been assigned to MHMC. Kenegos then commenced negotiating with MHMC on Ford's behalf. In her letters and telephone calls to MHMC, she contended that MHMC was required by California law to permit Ford to use the insurance proceeds to rebuild his residence. MHMC, however, refused to grant Ford permission to rebuild.

On April 9, 1984, Ford filed a complaint in the district court against MHMC. The complaint alleged that, under California law, MHMC had breached its implied covenant of good faith and fair dealing by refusing to permit Ford to use the insurance proceeds to rebuild.[2] Pending the outcome of this litigation, the insurance proceeds were placed in a jointly-held account.

MHMC moved for summary judgment and argued that, regardless of the actual value of the property, MHMC's security has been impaired by Ford's default and lack of creditworthiness. On February 13, 1986, the district court entered summary judgment in favor of MHMC. In view of Ford's "continuing and repeated defaults in making payments due [on his note], ... and [Ford's] demonstrated inability or unwillingness, or both, to keep [his] loan obligations current," the court concluded that MHMC has no duty to permit Ford to use the insurance proceeds to rebuild:

> If MHMC had permitted the insurance proceeds to be used for reconstruction, it would have had to part with the security of the cash payment already on hand, and would have had to defer indefinitely, until construction was completed, its right to foreclose on the security of the real property, both of which changes in its position would have constituted an impairment of its security as a matter of law. No evidence or findings as to the value of the subject real property are necessary to support this conclusion.

On this appeal, Ford contends that the district court erred in concluding as a matter of law that MHMC's security is impaired because Ford is in default. Ford argues that, under California law, the issue of impairment is " 'a question of fact to be determined in light of the particular circumstances of each case after a consideration of all of the relevant facts [sic].' " *Kreshek v. Sperling*, 157 Cal.App.3d 279, 283, 204 Cal.Rptr. 30, 32 (1984) (quoting *People ex rel. Dep't of Transp. v. Redwood Baseline, Ltd.*, 84 Cal.App.3d 662, 670, 149 Cal.Rptr. 11, 16 (1978)). Ford concedes that his default and poor credit history are relevant, but submits that the district court was wrong in its conclusion that the issue of impairment can be determined without considering the actual value of the property.

---

**2.** Ford's complaint also set forth four additional causes of action sounding in tort. However, Ford has not contested the district court's implicit conclusion that all of his causes of action were based on MHMC's alleged breach of its implied covenant.

Liberally construed, Ford's complaint could be interpreted to allege that, even if MHMC had no duty to allow Ford to rebuild, it breached its implied covenant of good faith and fair dealing by failing to promptly respond in any manner to Ford's requests to rebuild. However, because Ford has not argued on appeal that MHMC breached its implied covenant by failing to promptly respond, we do not address the issue.

## ISSUE PRESENTED

I. Whether the district court erred in concluding that, regardless of the actual value of the property, MHMC has no duty to permit Ford to use fire insurance proceeds to rebuild because Ford is in complete default on his note and MHMC is entitled to foreclose on the property at any time.

## STANDARD OF REVIEW

■■■■ The district court's entry of summary judgment is reviewed de novo. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir. 1986). The district court's interpretation of state law is also subject to de novo review. *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). We may affirm on any basis in the record. *DeNardo v. Murphy*, 781 F.2d 1345, 1347 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 1962, 90 L.Ed.2d 648 (1986); *Considine v. United States*, 683 F.2d 1285, 1288 n. 4 (9th Cir.1982).

## ANALYSIS

■■ In *Schoolcraft v. Ross*, 81 Cal. App.3d 75, 146 Cal.Rptr. 57 (1978), the trust deed at issue contained the same type of fire insurance clause as in this case. After a fire, Ross, the beneficiary, insisted on applying the insurance proceeds to the plaintiffs' indebtedness even though the plaintiffs had been current on their note prior to the fire. In upholding a judgment for the plaintiffs in their suit against Ross, the California Court of Appeal reasoned that "[t]he implied covenant [of good faith and fair dealing] imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Id.* at 80, 146 Cal.Rptr. at 59. Because "[t]he lender does not have the right to unilaterally cut off the borrower's right to use the loaned funds unless he can show that his security is impaired," *id.* at 80, 146 Cal.Rptr. at 59–60, the court concluded that the deed of trust "must be construed to avoid the unintended acceleration of the note," *id.* at 81, 146 Cal.Rptr. at 60.

Here there is no evidence that the security was impaired by the fire nor is there any evidence that plaintiffs were unwilling or unable to continue making payments on the property.

. . . .

... Forcing the buyer to pay off in advance would result in a buyer losing certain property rights contemplated by the parties, among them the benefit of a long-term loan which permits the buyer to spread the purchase price of the property over a long time.

*Id.* at 80–81, 146 Cal.Rptr. at 60. More recently, in *Kreshek v. Sperling*, 157 Cal. App.3d 279, 204 Cal.Rptr. 30 (1984), a fire partially destroyed the trustors' property, but the property was still worth over $2,000,000 after the fire. Although the trustors were current on their loan payments, and only $320,000 remained on the debt, the trial court ruled that the trust deed beneficiaries were entitled to have the $421,000 in insurance proceeds first applied to retire the outstanding indebtedness. The California Court of Appeal reversed because the trial court's ruling had allowed the beneficiaries "to accelerate payment on this note even though there was no showing that [their] security interest had been impaired." *Id.* at 283, 204 Cal.Rptr. at 32. Citing *Schoolcraft*, the court held that, "[t]o the extent the security was unimpaired, [the beneficiaries] had no right to keep the proceeds." *Id.*

Both *Kreshek* and *Schoolcraft* relied on *Milstein v. Security Pacific National Bank*, 27 Cal.App.3d 482, 103 Cal.Rptr. 16 (1972), in which the city had partially condemned the trustors' property and the trust deed beneficiary contested the trustors' claim to the city's payment for the partial taking. The court relied on the parties' implied covenant and found that "[t]he purpose of the note and deed of trust is that [the trustors] shall have the use of the funds loaned on the terms and at the interest rate specified in the note, and that the [beneficiary] shall have the security provided by the deed of trust." *Id.* at 487, 103 Cal.Rptr. at 18. Accordingly, the beneficiary was required to "distribute to [the trustors] all proceeds in excess of those necessary to recoup any impairment in se-

curity caused by the eminent domain proceeding." *Id.* at 487, 103 Cal.Rptr. at 19.[3]

The reasoning of the *Milstein–Schoolcraft–Kreshek* line of cases does not support Ford's contention that he was entitled to rebuild. Here, it is the trustor Ford who has failed "to do everything that the contract presupposes [he] will do to accomplish its purpose." *Schoolcraft,* 81 Cal.App.3d at 80, 146 Cal.Rptr. at 59. Since Ford has been "unwilling or unable to continue making payments on the property," *id.* at 80, 146 Cal.Rptr. at 60, he is the party who has frustrated "[t]he purpose of the note and deed of trust," *Milstein,* 27 Cal.App.3d at 487, 103 Cal.Rptr. at 18. Owing to the accumulation of unpaid interest, Ford's debt significantly exceeds the balance of the original principal, and MHMC's application of the insurance proceeds to Ford's overdue note will not result in MHMC's "accelerat[ing]" payment on this note." *Kreshek,* 157 Cal.App.3d at 283, 204 Cal. Rptr. at 32.

*Schoolcraft* was concerned with the trust deed beneficiary's use of a fortuitous fire to accelerate the trustor's loan. In this case, it is the trustor who is attempting to use a fire to deprive the trust deed beneficiary of its right to sell the property to cover the trustor's long overdue loan. The district court correctly concluded that MHMC's security would be impaired if it were required to defer foreclosure indefinitely while Ford rebuilds his residence. Since MHMC is entitled to foreclose at any time, construing the insurance clause so as to allow Ford to rebuild would defeat the "property rights contemplated by the parties" when the trust deed was executed. *Schoolcraft,* 81 Cal.App.3d at 81, 146 Cal. Rptr. at 60.[4]

Moreover, California observes "the traditional rule that a covenant of good faith and fair dealing will not be implied to vary the express unambiguous terms of a contract." *Milstein,* 27 Cal. App.3d at 487, 103 Cal.Rptr. at 19; *see also April Enters., Inc. v. KTTV,* 147 Cal. App.3d 805, 816, 195 Cal.Rptr. 421, 425 (1983). Under the express terms of the note and deed of trust, Ford is in default and MHMC has the right to sell the property at any time. Since reliance on the implied covenant would significantly prejudice MHMC's express contractual rights under the trust deed, the covenant should not be implied to permit Ford to rebuild.

The district court concluded that MHMC's security was impaired as a matter of law because MHMC's legal right to foreclose would be frustrated if it had to defer its trustee's sale indefinitely while Ford rebuilds his residence. Ford argues that the issue of impairment can never be one of law and always requires the court to consider evidence of the property's actual value. He cites *Kreshek,* 157 Cal.App.3d at 283, 204 Cal.Rptr. at 32, for the proposition that whether a lender's security is impaired is a question of fact. We note, however, that the case *Kreshek* relies upon also characterizes the issue as *"normally* a question of fact." *Redwood Baseline,* 84

---

**3.** We find the reasoning of *Schoolcraft* and its reliance on *Milstein* to be somewhat confusing. Clearly, if the trust deed property is partially condemned and the trustor keeps the condemnation award, as was the case in *Milstein,* the beneficiary's debt/security ratio has been adversely affected. In the case of a fire, however, the trustor does not keep the fire insurance proceeds, but rather is required to put them right back into the trust deed property. Thus, it is difficult for us to see how the beneficiary's security would be "impaired by the fire." *Schoolcraft,* 81 Cal.App.3d at 80, 146 Cal.Rptr. at 60. (If the trustor has failed adequately to insure the property's value against fire loss, that presents a different issue.)

The foregoing concern does not affect the outcome of this case. MHMC's security would

in any event be impaired if MHMC were deprived indefinitely of its right to foreclose so that Ford could rebuild his residence.

**4.** The district court also concluded that MHMC's security would be impaired because MHMC "would have had to part with the security of the cash payment already on hand" if it were required to let Ford rebuild. It appears to us, however, that MHMC's "part[ing] with the cash payment already on hand" cannot be the type of impairment contemplated by *Schoolcraft.* Such reasoning assumes away the problem, for the very issue is to determine under what circumstances a beneficiary must part with insurance proceeds so that the trustor can rebuild. If parting with the proceeds constitutes impairment, trustors could never rebuild.

Cal.App.3d at 688, 149 Cal.Rptr. at 28 (emphasis added). When the trustor's loan is in good standing, the issue of impairment will normally involve a factual inquiry into whether the market value of the trust deed property still adequately secures the trustor's indebtedness. This is because the purpose of a deed of trust is to provide the beneficiary with recourse to sufficient collateral upon the trustor's default. In this case, however, regardless of the value of Ford's property, the purpose of the deed of trust would be defeated if Ford were allowed to rely on the fire in effect to cure his longstanding default and to deprive MHMC of its contractual right to foreclose on the property at any time. Thus, we agree with the district court that it was unnecessary in this case to consider evidence of the actual value of Ford's property. That value is irrelevant to the impairment claimed by MHMC.

Assuming arguendo that the issue of impairment is always one of fact, we would nonetheless affirm the district court's judgment. There are no disputed issues of fact relevant to MHMC's claim that its security would be impaired if it were deprived of its right to foreclose immediately. On the record before us, a factual finding that MHMC's security was not impaired would be clearly erroneous. *See* Fed.R.Civ.P. 52(a).

## CONCLUSION

Ford is in long-standing default on his promissory note, and by the express terms of the trust deed, MHMC is entitled to foreclose on Ford's property immediately. If MHMC were required by its implied covenant to defer foreclosure indefinitely so that Ford can rebuild, its express contractual rights would be impaired. Thus, we affirm the district court's holding on summary judgment that *Schoolcraft v. Ross* does not require MHMC to let Ford rebuild.

AFFIRMED.