Lester R. KEITER, also known as Les Keiter, and Lila J. Keiter, husband and wife, Plaintiffs,

v.

The PENN MUTUAL INSURANCE COMPANY, a Pennsylvania Corporation; the Penn Insurance and Annuity Company, a Delaware corporation; Bernard Golden; John Does 1–10, Individuals, Corporations, Partnerships, Limited Partnerships, Joint Ventures, Defendants.

Civ. No. 95–00164 DAE.

United States District Court,
D. Hawai'i.

Sept. 22, 1995.

Joy S. Omonaka, Edmunds & Verga, Honolulu, HI, for Lester R. Keiter.

George H. Keller, Greeley Walker & Kowen, Honolulu, HI, for Lila J. Keiter.

Janice T. Futa, George H. Keller, Greeley Walker & Kowen, Honolulu, HI, for Penn Mut. Ins. Co., Penn Ins. & Annuity Co.

James T. Wong, Law Offices of John Cregor, Honolulu, HI, James T. Wong, Law Offices of James T. Wong, Honolulu, HI, for Bernard Golden.

*ORDER GRANTING PLAINTIFFS' MOTION TO FILE SECOND AMENDED COMPLAINT; DENYING AS MOOT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS ON FIRST AMENDED COMPLAINT; AND DISMISSING CERTAIN CLAIMS*

DAVID ALAN EZRA, District Judge.

The court heard the parties' motions on September 18, 1995. John S. Edmunds, Esq., Ronald J. Verga, Esq., Joy S. Omonaka, Esq., and Wesley D. Shimazu, Esq., appeared on the briefs or at the hearing on behalf of Plaintiffs; Janice T. Futa, Esq., and George H. Keller, Esq., appeared on the briefs or at the hearing on behalf of Defendants The Penn Mutual Life Insurance Company and The Penn Insurance and Annuity Company. James T. Wong, Esq., appeared on behalf of Defendant Bernard Golden. After hearing argument and reviewing the motion and the supporting and opposing memoranda, the court GRANTS Plaintiffs' leave to File their Second Amended Complaint. The court considers the Defendants' motion as it applies to Plaintiffs' Second Amended Complaint, and DISMISSES certain claims therein. The court DENIES as moot Defendants' Motion for Summary Judgment and for Judgment on the Pleadings on the First Amended Complaint.

## BACKGROUND

This dispute arises out of Plaintiffs' purchases of life insurance from Defendant Bernard Golden ("Golden"). Plaintiff Lester Keiter is a retired television and radio sportscaster, known as Les Keiter. He and his wife Lila Keiter are longtime residents of Hawaii. Golden, a resident of New York and an insurance agent, acted as an agent for The Penn Mutual Life Insurance Company ("PML") and The Penn Insurance and Annuity Company ("PIA") (collectively "PML/PIA"). Les Keiter purchased a "whole life" policy from one Arnold Panella in New York in the 1950s. After Golden took over the policy as agent, the policy continued in effect until 1982. Plaintiffs moved to Hawaii in 1970, but met with Golden in 1982 during a trip to New York.

Plaintiffs assert that Golden told them that Les Keiter needed to change the policy from "whole" to "universal life." Plaintiffs contend that Golden and PML/PIA knew or should have known that Les Keiter intended to retain Lila Keiter as the beneficiary. Plaintiffs allege that Golden focused on what would be best for "them" when he discussed their needs.

Plaintiffs assert that Golden then sold Les Keiter a "universal life" policy, mailing it to Honolulu. Les Keiter sent all payments from Honolulu until a dispute arose in 1994. Plaintiffs contend that Golden and PML/PIA did not disclose to them that, under a "universal life" policy, a drop in interest rates could erode Les Keiter's equity and greatly increase premium payments. Plaintiffs contend that Defendants marketed and sold the policy as part of a pattern of deliberately and fraudulently selling such policies during a period of high interest rates. Plaintiffs claim that Defendants specifically represented that the policy would benefit Lila Keiter. Plaintiffs allege that in an April 9, 1993 letter, Defendants failed to advise him that the monthly premium could increase from approximately $529.00 to approximately $2,784.00 per month, while the death benefit remained more or less unchanged. Les Keiter could not afford the increased premiums and let the policy lapse, obtaining a new policy with a difference in the death benefit of $280,000.00.

The First Amended Complaint contains Eight Counts: Negligence (Count I), gross negligence (Count II), breach of contract (Count III), breach of fiduciary duty (Count IV), fraud (Count V), intentional misconduct (Count VI), unfair and/or deceptive business practices (Count VII), and failure to turn over records (Count VIII). Defendants

move for summary judgment[1] as to all claims brought by Lila Keiter, arguing that she was not a party to the contract. Defendants also move for judgment on the pleadings on the claims for breach of fiduciary duty (Count IV) and failure to turn over records (Count VIII),[2] arguing that PML/PIA does not owe Plaintiffs a fiduciary duty under the insurance contract.

Plaintiffs admit that "certain of Penn Defendants' arguments are well taken," and move for leave to file a Second Amended Complaint. The Second Amended Complaint replaces the claim for breach of fiduciary duty (Count IV) with a claim for breach of the implied covenant of good faith and fair dealing (new Count IV). It also changes the basis for the claim of failure to turn over records, alleging in Count VIII that Defendants' failure also constitutes a breach of the implied covenant. Finally, the Second Amended Complaint attempts to clarify the role of Lila Keiter, adding under the claim for breach of contract (Count II) a claim for tortious breach of contract, and alleging that Lila Keiter suffered emotional distress. Defendants oppose Plaintiffs' motion, arguing that the proposed amendments are futile.[3]

*STANDARD OF REVIEW*

I. Motion for Leave to File an Amended Complaint

The Supreme Court has stated that amendment to pleadings is to be "freely given." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Accordingly, the Ninth Circuit has held that leave to amend under Rule 15(a) "shall be freely given when justice so requires," and that this policy should be applied with "extreme liberality." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987).

■ This liberality "is, however, subject to the qualification that amendment of the complaint does not cause the opposing party

undue prejudice, is not sought in bad faith, and does not constitute an exercise in futility." *DCD Programs, Ltd.,* 833 F.2d at 186. A critical factor to consider is the resulting prejudice to the opposing party. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1324 (9th Cir.1982). Prejudice to the opposing party would result if they were required to conduct extensive additional discovery if the amendment were allowed. *Howey v. United States,* 481 F.2d 1187, 1191 (9th Cir.1973).

■ A district court does not abuse its discretion in denying a motion for leave to amend when a new claim would prejudice the defendants and "greatly change the nature of the litigation." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990). "Putting the defendants 'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.'" *Priddy v. Edelman,* 883 F.2d 438, 447 (6th Cir.1989) (quoting *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 971 (6th Cir.1973)). Denial of a motion to amend is proper where there has been undue delay and more importantly, where discovery has closed. *Vollrath Co. v. Sammi Corp.,* 9 F.3d 1455 (1993), *cert. denied,* — U.S. ——, 114 S.Ct. 2163, 128 L.Ed.2d 886 (1994); *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 809–10 (9th Cir. 1988).

II. Motion to Dismiss

■ A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992) (quoting

---

1. Defendants PIA and PML filed the Motion for Summary Judgment as to All Claims of Plaintiff Lila J. Keiter and Motion to Dismiss Counts IV and VIII of Plaintiffs' First Amended Complaint on July 13, 1995. Defendant Golden joins in the motion. Exclusively for the purposes of the present motion and the Plaintiffs' Motion for Leave to File Second Amended Complaint, the court will not distinguish between Golden, PIA and PML.

2. Plaintiffs report that Defendants have now turned over these records in response to discovery requests. They continue to assert the claim for the damages incurred during the period Defendants withheld the records.

3. Defendants PML and PIA filed an opposition in which Defendant Golden joins.

*Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989)) (further citations omitted). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Id.* Civil rights complaints are to be liberally construed. *Id.* (citing *Gobel v. Maricopa County,* 867 F.2d 1201, 1203 (9th Cir.1989)).

To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. Monterey,* 920 F.2d 1496, 1507 (9th Cir.1990).

III. Motion for Judgment on the Pleadings

■ Rule 12(c) of the Federal Rules of Civil Procedure provides in part as follows:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, . . . .

The dismissal on the pleadings is proper only if the moving party is clearly entitled to prevail. *Doleman v. Meiji Mutual Life Insurance Co.,* 727 F.2d 1480, 1482 (9th Cir. 1984). All allegations of fact of the opposing party are accepted as true. *Id.* Generally, the court is unwilling to grant dismissal pursuant to Rule 12(c) "unless the movant clearly establishes that he is entitled to judgment as a matter of law." *Id.* (quoting 5A Wright & Miller, *Federal Practice and Procedure: Civil* § 1368). To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(c).

IV. Motion for Summary Judgment

■ Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

*DISCUSSION*

I. Motion for Leave to File Second Amended Complaint

In opposing Plaintiffs' motion to amend, Defendants argue that amendment would be futile because the new claims alleged would still be subject to dismissal. The Second Amended Complaint adds claims based upon an alleged breach of the implied covenant of good faith and fair dealing, removes claims based upon fiduciary duty, and makes clear that Lila Keiter's claims are exclusively grounded in emotional distress. Because Defendants oppose the motion for leave to file the Second Amended Complaint based only upon the merit of the claims alleged therein, the court will GRANT the Plaintiffs' leave to amend and will address Defendants' opposition as a motion to dismiss. The court will treat the Second Amended Complaint as filed, and will determine what claims remain after Defendants' motion. To the extent that the filing of the Second Amended Complaint removes claims upon which Defendants sought summary judgment or judgment on the pleadings, the court DENIES Defendants' motion as moot.

II. Breach of Implied Covenant of Good Faith and Fair Dealing

■ Defendants argue that Plaintiffs have not stated a cognizable claim for breach

of the implied covenant of good faith and fair dealing, and that no cause of action in tort exists for breach of the implied covenant. Defendants acknowledge that, under Hawaii law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Hawaii Leasing v. Klein,* 5 Haw.App. 450, 456 n. 6, 698 P.2d 309 (Haw.App.1985); Restatement (Second) of Contracts § 205 (1981). This court has held that simple breach of the implied covenant does not give rise to an action in tort.[4] *See, e.g., Genovia v. Jackson Nat'l Life Ins. Co.,* 795 F.Supp. 1036, 1045–46 (D.Hawaii 1992). However, *Genovia* and its progeny do not foreclose Les Keiter's action in contract,[5] and they allow an action for tortious breach of contract under *Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368 (1972), where Defendants have breached the contract in a willful or reckless manner. 795 F.Supp. at 1042. For these reasons, the court DISMISSES Plaintiffs' claim for tortious bad faith, and considers below whether any claim for breach of the implied covenant remains in contract.

■ Defendants argue that the duty of good faith arises from the agreement and extends only to situations connected therewith. They assert that Plaintiffs have not alleged bad faith conduct in connection with any policy provision. They indicate that nothing has triggered their duty to pay under the policy. Plaintiffs cite *A & E Supply Co. v. Nationwide Mutual Fire Ins. Co.,* 798 F.2d 669, 676 (4th Cir.1986), *cert. denied,* 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987), where the Fourth Circuit held that Virginia did not recognize an action in tort based on breach of the implied covenants. In describing the implied covenant, the court stated that:

> [t]he obligation arises from the agreement and extends only to situations connected with the agreement. *Cf. Reisen v. Aetna Life and Casualty Co.,* 225 Va. 327, 302

S.E.2d 529, 533 (1983) ("the existence of the [good faith] duty wholly depended upon a condition precedent, that is, coverage under the policy").

*Id.* at 677. "The implied covenant [of good faith and fair dealing] imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Ford v. Manufacturers Hanover Mortg. Corp.,* 831 F.2d 1520, 1523 (9th Cir.1987) (citation omitted).

Plaintiffs' claim rests upon extrinsic representations made by Defendants that Plaintiffs allege induced them to switch from "whole" to "universal" life, and that Defendants later wrongfully failed to provide them with information. Plaintiffs' loss of coverage through their ill-advised purchase forms the gravamen of the claim:

> If Plaintiffs had been fairly, adequately, properly, fully and completely advised of the risks inherent in the purchase of said universal life policy, Plaintiffs would not have purchased said policy and instead left in effect and continued in effect the whole policy....

Second Amended Complaint, at ¶ 31. Plaintiffs also claim that Defendants' failure to inform them of the effect of dropping interest rates compounded their mistake, but the core of the claim rests on the original decision to purchase the "universal life."

Defendants argue that Plaintiffs' claim for breach of the implied covenant does not relate to any contractual duty. "An insurer's first-party insurance obligation is its duty to compensate the insured for direct losses within the policy coverage." *A & E Supply,* 798 F.2d at 676 n. 8. An insured under a policy of life insurance has a reasonable right to expect that a valid claim will be paid. *Diamon v. Penn Mut. Fire Ins. Co.,* 247 Pa.Super. 534, 372 A.2d 1218 (1977); 16A Appleman, Insurance Law and Practice,

---

**4.** The issue of whether Hawaii recognizes the tort of breach of duty of good faith and fair dealing (i.e., the tort of "bad faith") in an insurance contract in either the first or third-party context has been certified by Federal District Court Judge Samuel P. King to the Hawaii State Supreme Court in *Pacific Resources, Inc. et al. v. National Union Fire Ins. Co., et al.,* CV NO. 92-683 (D.Haw., June 21, 1993). As yet, the Hawaii

Supreme Court has not issued a decision on this question.

**5.** In *Genovia,* the court granted a defense motion to dismiss the bad faith claim *"to the extent it seeks to state a cause of action in tort."* 795 F.Supp. at 1046 (emphasis added). This leaves the covenant in the contract, where it may form the basis of a breach.

§ 8878 (1981). Prior to the purchase of the "universal life" policy, Defendants owed Plaintiffs a duty of good faith in connection with the "whole life" policy.

Defendants' argument presents the question whether good faith under an insurance contract extends only to the performance of the agreement or to the marketing of new agreements. The Restatement (Second) of Contracts indicates that the duty of good faith in some situations does run beyond performance and execution of contractual duties to contract negotiation and purchase. *See* Restatement (Second) of Contracts § 205, comments b and c (1981) (citing National Labor Relations Act § 8(d) as a statutory example of the duty to bargain in good faith). The Uniform Commercial Code and the Restatement, however, do not extend the duty to contract negotiation. *See* UCC § 1–203, codified in Hawaii at H.R.S. § 490:1–203 ("obligation of good faith in [ ] performance and enforcement."); Restatement (Second) of Contracts § 205 ("performance and enforcement"). The Hawaii statute covering unfair methods of competition or unfair or deceptive acts or practices in the business of insurance clearly lists misrepresentations in the marketing of insurance as an unfair practice. H.R.S. § 431:13–103. However, this statute does not create a private right of action; it reserves all enforcement power to the commissioner of insurance. *Genovia*, 795 F.Supp. at 1045. Neither does it define the parameters of the good faith obligation of an insurer. It contains definitions of prohibited conduct unrelated to the marketing, performance and execution of insurance policies. For example, the statute prohibits the defamation of insurers and the creation of monopolies. H.R.S. § 431:13–103(a)(3) and (4).

The court finds no Hawaii decision on point. Indeed, the court has found little authority addressing the issue of good faith in the context of the marketing of insurance policies. Many states find, like the Restatement, that good faith does not extend to negotiations absent special circumstances. *See, e.g., Racine & Laramie, Ltd., Inc. v. California Dept. of Parks and Recreation,* 11 Cal.App.4th 1026, 14 Cal.Rptr.2d 335, 341 (1992). A duty to negotiate in good faith may arise from explicit agreement or implication from a prior contract subject to modification, and misrepresentations may involve estoppel. *Id.*

In this case, the court finds that the special circumstances alleged do give rise to the implied covenant of good faith and fair dealing and if presented with the same circumstances the Hawaii Supreme Court would so rule. *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). Plaintiffs allege that the parties had a contract, which the Defendants induced Les Keiter to cancel in favor of the new contract, the universal policy. This is similar to the modification of an existing contract, one of the special circumstances in which the duty of good faith negotiation arises even between sophisticated parties. *Id.* Then, according to Plaintiffs, the Defendants further misled Les Keiter regarding the nature of the new policy by withholding information. The court need not reach the question whether, in general, insurers marketing new policies must act in good faith. The previous contractual relationship and the allegations of continued misconduct weigh heavily in favor of finding a sufficient connection to the contract here. Moreover, even though Hawaii's statute governing unfair insurance practices does not purport to define good faith and does not give rise to a private right of action, the public policy expressed in Hawaii's statutory prohibition on misrepresentations by insurers lends support to imposing the contractual duty against insurers who market new policies to existing customers. The disparities between the information available to the parties and their relative expertise also weigh in favor of imposing the duty of good faith in this context. The court finds that the Second Amended Complaint does state claims sounding in contract for breach of the implied covenant of good faith and fair dealing.

For these reasons, the court DISMISSES the claims for breach of the implied covenant of good faith and fair dealing (Counts IV and VIII) to the extent they seek tort damages, and DENIES the motion to dismiss them to the extent they sound in contract.

### III. Lila Keiter

Defendants assert that Lila Keiter, the beneficiary of the policy, has no present

or absolute interest in the benefits of the policy, because Les Keiter retains the right to change beneficiaries at any time. Plaintiffs agree that Lila Keiter has no contract claims,[6] but maintain that she has properly alleged tort claims. Plaintiffs add that their Second Amended Complaint makes clear that Lila Keiter asserts only claims based upon her emotional distress. The court agrees with the parties regarding the contract claims, and DISMISSES all claims arising out of Lila Keiter's alleged contractual relationship with Defendants.

Defendants also argue that Lila Keiter may not base a claim for emotional distress upon the alleged tortious breach of a contract to which she was not a party. Defendants cite *Dold v. Outrigger Hotel*, and its progeny, arguing that in none of these cases of tortious breach has a person not a party to the contract received emotional distress damages. Plaintiffs respond that parties owe duties in tort to those who are foreseeably endangered by their conduct, and that Lila Keiter was foreseeably injured by Defendants' tortious breach. *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970).

In *Dold v. Outrigger Hotel*, the Hawaii Supreme Court held that "where a contract is breached in a wanton or reckless manner as to result in a tortious injury, the aggrieved person is entitled to recover in tort." 54 Haw. at 22, 501 P.2d 368. In *Dold*, the hotel breached its contract with guests who had made reservations to stay at the Outrigger, forcing the guests to accept accommodations at a lesser hotel. 54 Haw. at 19, 501 P.2d 368. *Dold* makes the predicate act a wanton breach resulting in tortious injury. In *Chung v. Kaonohi Center Co.*, 62 Haw. 594, 618 P.2d 283 (1980), the Hawaii Supreme Court extended the holding in *Dold* to an action for breach of contract between two commercial entities, stating:

We do not think that the dispositive factor in allowing damages for emotional distress is the nature of the contract. The dispositive factor is, rather, the wanton or reckless nature of the breach. The basis of our holding in Dold was our recognition that "certain situations are so disposed as to present a fusion of the doctrines of tort and contract."

62 Haw. at 602, 618 P.2d 283. (quoting *Dold*, 54 Haw. at 22, 501 P.2d 368).

Contract mixes with tort under the *Dold* analysis, and *Chung* holds that the nature of breach, not the type of contract, determines the existence of a tortious breach. *Id.* Because the wanton or reckless nature of the breach stands as the dispositive factor, this court has previously stated that "one may breach a duty created by a contract in such an egregious fashion as to implicate the breach of another duty, not created by the contract." *Resco, Inc. v. Founders Title Group, Inc.*, 751 F.Supp. 1442, 1444 (D.Hawaii 1990). "This duty mandates that *one contracting party* refrain from *intentionally injuring another contracting party* by the means of breaching a contract." *Id.* (emphasis added). The duty "not created by the contract" is a duty in tort. However, the duty in tort would not arise absent the contract and willful contract breach.

The court believes that extending the availability of damages in tort beyond the contracting parties would constitute an unwarranted expansion of *Dold*.[7] This court will not expand *Dold* beyond its interpretation by the Hawaii Supreme Court. *See Genovia*, 795 F.Supp. at 1046 (this court refused to "overstep[ ] the bounds of its authority" and adopt the tort of a bad faith in Hawaii in the absence of state decisions). In order to state a claim for tortious breach of contract, a plaintiff must first show a breach,

6. Defendants assert and Plaintiffs do not contest that courts addressing the issue have universally held that a beneficiary under a life insurance policy has no vested interest until the death of the insured. *See, e.g., Pierson v. Buyher*, 330 N.C. 182, 409 S.E.2d 903 (1991); *Kucera v. Metropolitan Life Ins. Co.*, 719 F.2d 678 (3d Cir. 1983).

7. While the Hawaii Supreme Court has not directly addressed this question, this court has found no case where a Hawaii court awarded damages for tortious breach to a person not a party to the contract. *Cf. Chung*, 62 Haw. at 594, 618 P.2d 283 (action between parties to commercial contract); *Genovia*, 795 F.Supp. at 1038 (beneficiary of life insurance policy sued *after* refusal to pay upon death of insured); *Paulson v. Bromar*, 775 F.Supp. 1329 (D.Hawaii 1991) (distributor brought action against manufacturer for breach of distribution agreement).

and then show that it was wanton or reckless. It is the wanton or reckless nature of the breach, and not the nature of foreseeable damages, that gives rise to the availability of the tort damages. The breaching party has a duty independent of the contract to refrain from breaching in a wanton and reckless manner, but this duty still springs out of the contractual relationship and its breach. It does not constitute a tort between strangers.

 To allow a plaintiff who could never demonstrate breach of contract to state a claim for damages for tortious breach would loose tortious breach from its contractual mooring. Only when the plaintiff can show breach and recklessness or wantonness may tort damages supplement contract damages in order to discourage willful conduct and to compensate the contracting party. The court finds a substantial likelihood that the Hawaii Supreme Court would not so expand *Dold*, and the court will not do so here. *See Takahashi*, 625 F.2d at 316. The court DISMISSES Lila Keiter's claims based upon tortious breach.

IV. Negligent and Intentional Infliction of Emotional Distress

 In addition, Defendants argue that Lila Keiter cannot state a claim for negligent infliction of emotional distress because (1) there is no evidence that Defendants' actions were "unreasonably dangerous" and (2) H.R.S. § 663–8.9(a) prohibits recovery for negligent infliction of emotional distress where the "distress or disturbance arises solely out of damage to property or material objects." Defendants' arguments apply equally well to Les Keiter's claims for negligent infliction of emotional distress, and the court will address them as they apply to these claims of both Plaintiffs.

The "unreasonably dangerous" formulation comes from the Hawaii Supreme Court's definition of reasonably foreseeable consequences in *Rodrigues v. State*, 52 Haw. 156, 172, 472 P.2d 509 (1970). The court stated:

Thus a further limitation on the right of recovery, as in all negligence cases, is that the defendant's obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the

conduct unreasonably dangerous. (citation omitted). Therefore, on remand, the trial court must also determine whether, under the facts of this case, serious mental distress of the plaintiff was a reasonably foreseeable consequence of defendant's act.

*Id.* Contrary to Defendants' argument, this language does not require Plaintiffs to separately allege unreasonably dangerous conduct. Rather, it places a further limitation on the foreseeability of damages arising from negligence. Such damages must not only be foreseeable, but so clearly foreseeable that the alleged conduct carries an unreasonable risk of causing such damages. *Id.* The court cannot conclude as a matter of law that the Defendants' alleged conduct did not carry an unreasonable risk of emotional distress for Lila Keiter.

However, recovery for negligent infliction of emotional distress is also limited to situations where there is "some physical injury to property or a person" resulting from the defendant's conduct. *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F.Supp. 1365 (D.Hawaii 1995) (quoting *Ross v. Stouffer Hotel Co. (Hawaii) Ltd., Inc.*, 76 Hawaii 454, 465–66, 879 P.2d 1037 (1994)). A Hawaii statute provides that one who does not suffer physical injury or mental illness may not recover for negligent infliction of emotional distress "if the distress or disturbance arises solely out of damage to property or material objects." H.R.S. § 663–8.9. However, Plaintiffs point out that this statute only became effective in 1986, after some of the alleged conduct here.

The court need not apply the statute, however, because there has been no "physical injury to property" as required by Hawaii case law. *Ross*, 76 Hawaii at 465–66, 879 P.2d 1037. Plaintiffs argue that the damage to the insurance policy qualifies as damage to property, but the damage is not "physical" in the sense likely to produce severe emotional distress. *See Campbell v. Animal Quarantine Station*, 63 Haw. 557, 560, 632 P.2d 1066 (1981) (damages awarded in death of a dog). The damage alleged by Plaintiffs is to an expectancy in a life insurance contract. Under the teaching of Hawaii case law, such damage does not qualify as sufficient to give

rise to a cause of action for negligent infliction of emotional distress.

 While the Second Amended Complaint does not place them into a separate claim, Plaintiffs also appear to claim damages for intentional infliction of emotional distress. Recovery for intentional infliction of emotional distress is permitted only if the alleged tortfeasor's acts were "unreasonable." *Ross*, 76 Hawaii at 465, 879 P.2d 1037 (citing *Calleon v. Miyagi*, 76 Hawaii 310, 321 n. 7, 876 P.2d 1278 (1994), *as amended*, 76 Hawai'i 453, 879 P.2d 558 (1994); *Chedester v. Stecker*, 64 Haw. 464, 467, 643 P.2d 532 (1982); *Marshall v. University of Hawaii*, 9 Haw. App. 21, 38, 821 P.2d 937 (1991)). "An act is unreasonable if it is without just cause or excuse and beyond all bounds of decency[.]" *Id.* (citations omitted). "In other words, the act complained of must be 'outrageous,' as that term is employed in the Restatement (Second) of Torts § 46 (1965)." *Id.* The Restatement (Second) of Torts states:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 comment d. "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." *Ross*, 76 Hawaii at 465, 879 P.2d 1037 (citing *Wong v. Panis*, 7 Haw.App. 414, 421, 772 P.2d 695 (1989)).

 The court finds as a matter of law that the alleged conduct here does not qualify as "outrageous" under Hawaii law. Reasonable persons could not differ over whether the conduct Plaintiffs allege is utterly intolerable in a civilized society. Although many cases of intentional infliction of emotional distress should go to a jury, this is not one of them. The allegations in the Second Amended Complaint simply do not rise to the level of "outrageous." If courts do not in clear cases exercise their review of such claims in the first instance, the standard of outrageous will be expanded into an unreviewable jury question, diluting the importance of the cause of action and the available relief.

For these reasons, the court DISMISSES the claims of Lila Keiter in their entirety. The court also DISMISSES Plaintiff Les Keiter's claims for negligent and intentional infliction of emotional distress.[8]

### CONCLUSION

For the reasons stated above, the court GRANTS Plaintiffs' Motion of Leave to File Second Amended Complaint, DISMISSES Counts IV and VIII to the extent they seek damages in tort, DISMISSES all claims of Plaintiff Lila Keiter, and DISMISSES Plaintiff Les Keiter's claims for negligent and intentional infliction of emotional distress. To the extent it applies to claims deleted in the Second Amended Complaint, the court DISMISSES Defendants' Motion for Summary Judgment and Judgment on the Pleadings as moot.

IT IS SO ORDERED.

---

8. Defendants did not move upon and this court does not reach the issue of Les Keiter's emotional distress damages arising out of tortious breach of contract.